UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

| | | |
|---|---|---|
| JEROME BYERS,<br><br>Plaintiff,<br><br>v.<br><br>INDELIBLE MANAGEMENT SOLUTIONS, INC., a Florida Corporation, INDELIBLE SOLUTIONS, LLP, a Florida Limited Liability Partnership, JOSHUA HAY, an individual, MICHAEL WHITE, an individual, and JOSE ALFARO, an individual,<br><br>Defendants. | ) | Case No. 4:26-cv-00184 |

**COMPLAINT**

Plaintiff Jerome Byers sues defendants, Indelible Management Solutions, Inc. ("Indelible"), Indelible Solutions, LLP (the "LLP"), Joshua Hay, Michael White, and Jose Alfaro (collectively, "Defendants"), and alleges:

Neither Indelible nor the LLP could exist without Mr. Byers' leadership and financial wherewithal. Having placed both companies in financially viable condition, profitable to their owners, Mr. Byers

disclosed to those same owners his life-threatening health condition and sought to retire. Rather than honoring their obligations to Mr. Byers, Defendants embarked on a retaliatory campaign of discrimination against Mr. Byers. This complaint seeks redress for that harm.

Parties, Jurisdiction, and Venue

1. Indelible is a Florida corporation with its principal place of business in Tallahassee, Florida.

2. Prior to and during the events below, Indelible conducted substantial business in Tallahassee, Florida, as an administrative management consulting firm.

3. Indelible and its affiliates employ over 1,200 individuals and have had a similar employment headcount in past years, including the previous calendar year. At all times material to this action, Indelible is believed to have employed over 100 individuals.

4. Personal jurisdiction over Indelible is proper because Indelible:

a. is a Florida corporation;

b. breached a contract in the state of Florida by failing to adhere to Indelible's March 31, 2022, shareholders agreement (the "Shareholders Agreement");

c. engaged in substantial and not isolated activity within Florida with its operations throughout the state;

d. illegally discriminated and retaliated against Mr. Byers within Florida; and

e. committed other violations of state and federal law within Florida, as described throughout this complaint.

5. The LLP is a Florida limited liability partnership. Prior to and during the events below, the LLP conducted substantial business in Tallahassee, Florida, as an administrative management consulting firm.

6. Personal jurisdiction is proper over the LLP because the LLP:

a. is a Florida limited liability partnership;

b. breached a contract in the state of Florida by failing to adhere to the LLP's March 31, 2022, partnership agreement (the "Partnership Agreement");

c. engaged in substantial and not isolated activity within Florida with its operations throughout the state; and

d. committed other violations of state and federal law as described throughout this complaint within Florida.

7. Mr. Hay is an individual residing in Florida. He is a shareholder of Indelible, Indelible's president, and a member of Indelible's

board of directors. Mr. Hay also is a partner in the LLP and is the LLP's president and chief executive officer.

8. Personal jurisdiction is proper over Mr. Hay because he:

a. is a Florida resident;

b. breached contracts in Florida by failing to adhere to the Shareholders Agreement and Partnership Agreement;

c. breached his fiduciary duties owed to Mr. Byers in Florida;

d. illegally discriminated and retaliated against Mr. Byers within Florida; and

e. committed other violations of state and federal law as described throughout this complaint within Florida.

9. Mr. White is an individual residing in Florida. He is a shareholder of Indelible, Indelible's vice president, and a member of Indelible's board of directors. Mr. White also is a partner in the LLP and is the LLP's vice president.

10. Personal jurisdiction is proper over Mr. White because he:

a. is a Florida resident;

b. breached contracts in Florida by failing to adhere to the Shareholders Agreement and Partnership Agreement;

c. breached his fiduciary duties owed to Mr. Byers in Florida;

d. illegally discriminated and retaliated against Mr. Byers within Florida; and

e. committed other violations of state and federal law as described throughout this complaint within Florida.

11. Mr. Alfaro is an individual residing in Florida. He is a shareholder of Indelible and is Indelible's chief strategy officer.

12. Personal jurisdiction is proper over Mr. Alfaro because he:

a. is a Florida resident;

b. breached a contract in Florida by failing to adhere to the Shareholders Agreement;

c. breached his fiduciary duties owed to Mr. Byers in Florida;

d. illegally discriminated and retaliated against Mr. Byers within Florida; and

e. committed other violations of state and federal law as described throughout this complaint within Florida.

13. Mr. Byers (the plaintiff) is an individual residing in Florida and a shareholder of Indelible. At the time of the events in this complaint,

Mr. Byers was an officer of Indelible and the chairman of Indelible's board of directors. Mr. Byers is a partner in the LLP and was a strategic advisor to the LLP.

14. Venue is proper because Indelible and the LLP have their principal place of business in Tallahassee.

15. All conditions precedent to bringing this action have occurred or have been waived. All required administrative remedies have been exhausted.

16. Mr. Byers has retained Smith Hulsey & Busey to represent him in this action and is obligated to pay Smith Hulsey & Busey's reasonable attorneys' fees.

17. This Court has subject matter jurisdiction over the allegations in this complaint pursuant to 28 U.S.C. § 1331 and 1367. This Court has federal question jurisdiction over the allegations in this complaint stemming from Defendants' violation of 29 U.S.C. Ch. 28 ("Family and Medical Leave Act"), 29 U.S.C. Ch. 18 ("Employee Retirement Income Security Program"), and 42 U.S.C. §§ 12101–12213 ("Americans with Disabilities Act"). All other claims are so related to the federal claims in this action that they form part of the same case or controversy, given that all claims relate to Defendants' unlawful (i) termination of Mr. Byers; (ii)

denial of Mr. Byers' retirement and associated benefits; (iii) denial of Mr. Byers' employment benefits; and (iv) related discrimination.

<u>The Shareholders Agreement</u>

18. On March 31, 2022, Messrs. Byers, Hay, and White entered into the Shareholders Agreement.

19. Mr. Alfaro later became a shareholder and bound himself to the Shareholders Agreement.

20. Mr. Byers was an officer of Indelible and the chairman of Indelible's board of directors.

21. At all times material, Mr. Byers carried out his roles as officer and director, and otherwise complied with his obligations under the Shareholders Agreement.

22. During the same time, White, Hay, and Alfaro each served as officers, directors, and shareholders for Indelible.

23. On March 6, 2025, Mr. Byers submitted a notice of retirement to Defendants—which triggered obligations under the Shareholders Agreement.

24. Pursuant to Section 5.1 of the Shareholders Agreement, Indelible must purchase all Common Stock[1] of a Retiring Shareholder—unless the Shareholder committed a Defaulting Event.

25. Article I of the Shareholders Agreement defines a Defaulting Event:

> "Defaulting Event" shall mean with respect to a Shareholder (i) any violation or breach of Articles VI or VII hereof, (ii) the commission of any act that constitutes bad faith, fraud, gross negligence, breach of fiduciary duty, recklessness, willful misconduct, a willful violation of any material law, or wanton or willful neglect, or such Shareholder's disparagement of the Company or its Affiliates, or breach of his fiduciary duties, or (iii) an Act of Insolvency.

26. There is no dispute that Article VI, Article VII, and the Acts of Insolvency are *not* at issue. To the contrary, the only "Defaulting Event" Defendants have alleged is pursuant to subsection (ii).

27. If the Shareholder retires (as did Mr. Byers), the Shareholder is entitled to the full extent of the fair market value of the Common Stock—without any discount.

28. In the event of a Defaulting Event, on the other hand, Indelible has a right to buy out the shareholder's interest at a discount, as

[1] Unless otherwise stated in this complaint, capitalized terms have the definitions ascribed to them in the Shareholder Agreement or Partnership Agreement, as applicable.

provided by Section 5.3(a). If Indelible does so, the purchase price is "subject to reduction in the amount of all out-of-pocket legal and accounting fees incurred by the Company due to such Defaulting Event and a reduction equal to twenty-five percent (25%) of the Purchase Price as liquidated damages." Thus, Defendants have an economic interest in finding a "Defaulting Event" regardless of whether a default exists.

29. Nearly three months after Mr. Byers' notice of retirement, Defendants had neither acknowledged nor accepted the notice of retirement. Instead, Mr. Byers received abusive and irregular treatment from Defendants, as more particularly described below.

30. On June 4, 2025, Mr. Byers sent Defendants correspondence that expedited his retirement date.

31. Defendants responded to Mr. Byers' proposal on June 26, 2025, via a letter from counsel, claiming Mr. Byers had breached the Shareholders Agreement at the latest on June 17, 2025, and **rejecting Mr. Byers' retirement**. Instead, Defendants would treat Mr. Byers' departure as a Defaulting Event given his "breaches of fiduciary duty and willful misconduct."

32. Before sending their June 26 letter, Defendants had never provided any notice of Defendants' position that Mr. Byers had

committed any actual, potential, speculative, or purported breach of the Shareholders Agreement.

33. On July 1, 2025, Mr. Byers' counsel responded to Defendants' letter, rebutting each point Defendants attempted to make in their letter.

34. On July 31, 2025, Indelible sent Mr. Byers a notice ignoring Mr. Byers' resignation and purporting to terminate Mr. Byers' employment.

35. On October 21, 2025, after waiting for a valuation for nearly **seven months**, Mr. Byers sent a letter to Defendants observing that, even if Mr. Byers committed a Defaulting Event (he did not), Defendants waived their argument pursuant to Section 5.3(a) of the Shareholders Agreement. Specifically, Defendants failed to act within 120 days of becoming aware of the alleged Defaulting Event, as the latest date on which Defendants became aware of any purported Defaulting Event (June 17, 2025).

36. Regardless of whether a shareholder retires or Indelible treats the shareholder's actions as a Defaulting Event, Section 5.2(d) of the Shareholders Agreement requires Indelible to conduct a fair market

valuation for the purchase price of Mr. Byers' Common Stock before the Closing.

37. **Ten months** after Mr. Byers' first of multiple attempts to obtain a timely valuation, Indelible finally responded with a valuation on January 14, 2026.

38. Despite the extraordinary delay, the valuation contained manifest error on its face.

39. Under the terms of the Shareholders Agreement, the valuation also was required to evaluate Mr. Byers' partnership interest in the LLP. It did not.

40. Further, Defendants have refused to disclose to Mr. Byers the information provided to Mitchell & Titus, despite the valuation's disclaimer that "the validity of the calculation of value depends on the completeness and accuracy of the information provided."

41. The valuation also is facially invalid for the use to which Defendants have put it. The valuation states that it is to be "used for the purpose of internal planning, and it is invalid for any other purpose."

42. Section 10.1(a) of the Shareholders Agreement requires Indelible to make:

> annual distributions equal to the estimated federal income taxes that will be incurred by the

> Shareholders as a result of the allocation of taxable income to them in respect of their ownership of Common Stock with such estimate calculated by the Company with the assumption that each Shareholder pays taxes on that portion of the Company's federal taxable income attributed to such Shareholder during the Fiscal Year or other taxable period at the highest marginal income tax rate then applicable to natural persons under the Code.

43. As of Mr. Byers' letter dated June 4, 2025, Indelible had failed to make the required distributions for the past five quarters. Further, as acknowledged by the Defendant's June 26, 2025, letter, Indelible made an improper distribution for 2022. Indelible based its calculations on Mr. Byers owning a 7.77% share of the Common Stock, while Mr. Byers' actual ownership percentage was 10%.

44. Section 10.1(b) of the Shareholders Agreement requires Indelible "make other distributions from available cash semi-annually or at more frequent intervals in the discretion of the Board." Indelible has failed to make such distributions for the past three and a half years, despite having available cash throughout this period.

45. Schedule 3.3(k) of the Shareholders Agreement allows shareholders to obtain a motor vehicle "that is purchased, owned, maintained and insured by" Indelible. Mr. Byers notified Defendants before purchasing his company vehicle on February 13, 2025. Defendants

failed to make the required payments on the vehicle—while making payments on their own vehicles.

46. Schedule 3.3(k) of the Shareholders Agreement also states:

> Shareholders shall be eligible to participate in all employee benefit plans, policies, programs, and perquisites available to other executive officers of the Company, including, without limitation, all health, life and disability insurance programs and retirement or savings plans currently offered by the Company.

47. Defendants nevertheless ceased paying for Mr. Byers' health and life insurance policies. Defendants did so at a time when they were aware that Mr. Byers was about to undergo a heart procedure. This caused Mr. Byers to incur the cost of the heart procedure without the assistance of a company-funded insurance policy.

48. Article I of the Shareholders Agreement defines Insurance Policy as "the life insurance policies to be obtained and maintained by the Company on each of the Shareholders the amount of in the amount of $2,350,000.00 for Byers."

49. Section 5.2(f) of the Shareholders Agreement controls Insurance Policy procedures. This Section states:

> The Shareholders shall cause the Company promptly to obtain and maintain the Insurance Policies, the beneficiary of each of which is the Company. . . . Upon the retirement of a

> Shareholder, the Company shall promptly take all action and execute all documents, in each case as are required to unconditionally transfer the applicable Insurance Policy to the Retiring Shareholder.

50. Defendants failed to (i) maintain the Insurance Policy for Mr. Byers, allowing it to lapse, and (ii) transfer the applicable Insurance Policy to Mr. Byers.

51. Section 3.3 of the Shareholders Agreement states "the following major decisions shall require the approval of Shareholders holding seventy percent (70%) or more of the issued and outstanding Common Stock; provided, however, that the approving Shareholders must include Byers." One such major decision is listed in Section 3.3(k), which states "any change in the salary and/or compensation of Byers (including, without limitation, the salary set forth on Schedule 3.2)."

52. Schedule 3.2 provides "the base salary for Byers shall be the greater of (i) 35% of the base salary paid to the President/Chief Executive Officer, and (ii) $170,000."

53. Defendants altered Mr. Byers' salary from the amounts set in Schedule 3.2 without Mr. Byers' approval.

54. As shown on Schedule 1 of the Shareholders Agreement, Mr. Byers initially held a 25% interest in Indelible.

55. White and Hay each subsequently agreed to purchase a 7.5% interest from Mr. Byers, which was supposed to leave Mr. Byers with the 10% interest in Indelible shown on Schedule 1 (as amended effective April 1, 2022). Instead, Defendants improperly caused Mr. Byers' ownership interest to be diluted from 10% to a 6.99%.

56. In 2025, Mr. Byers experienced increased health struggles stemming from a heart condition. Mr. Byers informed Defendants of his heart condition on multiple occasions. Defendants were aware that Mr. Byers' health condition played into his decision to submit his notice of retirement from Indelible and the LLP.

57. Mr. Byers' condition worsened, and his medical providers informed him that he would need to undergo a heart procedure. Mr. Byers' medical providers also informed him that he would need to avoid work and other forms of stress for weeks following his procedure. Thus, Mr. Byers notified Indelible's chief legal counsel and human resources department that he needed time off from his roles for the procedure and associated recovery. Defendants did not acknowledge this notice.

58. Mr. Byers underwent the heart procedure around June 2025. Knowing Mr. Byers would be unable to attend, Defendants then scheduled and conducted multiple special meetings.

59. Indelible then rejected Mr. Byers' retirement and terminated Mr. Byers' employment. Indelible cited these "missed" meetings as a purported Defaulting Event and a basis for denying Mr. Byers' retirement.

60. Indelible then ceased funding Mr. Byers' health and life insurance policies.

## The Partnership Agreement

61. On March 31, 2022, Messrs. Byers, Hay, and White agreed to the Partnership Agreement for the LLP as partners.

62. In consideration for the Partnership Agreement, Mr. Byers agreed to serve as an officer for the LLP as a strategic advisor. White and Hay also agreed to serve as officers for the LLP.

63. At all times before Defendants prevented Mr. Byers' performance, Mr. Byers fulfilled his obligations under the Partnership Agreement.

64. Section 8.04 of the Partnership Agreement states that if a partner retires or a Defaulting Event occurs, "Section 5.2 of the Shareholders Agreement . . . shall govern."

65. Section 5.2 of the Shareholders Agreement requires that the partner be paid for the fair market value of their interest in the LLP.

66. Mr. Byers submitted his notice of retirement from the LLP on March 31, 2025. Despite this, Defendants still have not paid Mr. Byers the fair market value of his partnership interest in the LLP.

67. Defendants have also failed to comply with the valuation procedures set forth in the Partnership Agreement and the Shareholders Agreement. As previously stated, the valuation provided does not value the LLP. For this reason alone, the valuation contains manifest error.

68. Under Section 6.02, the LLP was required to make annual distributions to the partners in an amount equal to the estimated federal income tax incurred by the partner due to their partnership interest in the LLP. In 2024, the LLP's tax distribution to Mr. Byers was significantly delayed, resulting in a $9,000 late fee from the IRS.

69. Likewise, under Section 6.01, the LLP was required to distribute Available Cash semi-annually. The LLP failed to distribute Available Cash to Mr. Byers as required by the Partnership Agreement.

**Count I**
**(Family and Medical Leave Act—The Indelible Defendants)**

70. Mr. Byers realleges paragraphs 1 through 69.

71. Mr. Byers was an employee of Indelible, serving as an officer. Indelible had employed Mr. Byers since March 31, 2022, up until the date

of his termination on July 31, 2025. Mr. Byers also worked more than 1,250 hours during the year prior to June 2025.

72. At all times material, Indelible employed more than 50 employees within 75 miles of the location where Mr. Byers worked.

73. At the time of Mr. Byers' heart procedure and subsequent surgery, Mr. Byers had not exhausted his 12 workweeks of FMLA leave in the leave year.

74. Mr. Byers notified Indelible that he was set to undergo a heart procedure. Indelible officials were apprised of Mr. Byers' condition on multiple occasions.

75. Mr. Byers accordingly notified Indelible that he would need time off to undergo and recover from this heart procedure, which Indelible ignored. Mr. Byers then underwent his heart procedure around June 2025.

76. Mr. Byers was incapacitated during the time of the heart procedure, as he was undergoing the procedure. Further, Mr. Byers was incapacitated for weeks after his procedure.

77. Indelible scheduled special set meetings during the period Mr. Byers informed Indelible that he was required to take off for his heart procedure and recovery.

78. The Indelible Defendants denied Mr. Byers' retirement and terminated Mr. Byers for engaging in FMLA-protected activity. The Indelible Defendants used these "missed" meetings, meetings "missed" because of FMLA leave that the Indelible Defendants knew about before calendaring the special set meetings, as the basis for their adverse action against Mr. Byers. Therefore, the Indelible Defendants took adverse action against Mr. Byers for taking FMLA leave.

79. Further, the Indelible Defendants ceased paying for Mr. Byers' health insurance while he was experiencing his condition. Given the Indelible Defendants' awareness of Mr. Byers' condition, heart procedure, and associated recovery, this interference with Mr. Byers' health insurance hampered Mr. Byers' ability to take FMLA leave.

80. The Indelible Defendants discriminated and retaliated against Mr. Byers for engaging in FMLA-protected activities. Further, the Indelible Defendants interfered with Mr. Byers' ability to engage in FMLA-protected activities. The Indelible Defendants' FMLA violation was not in good faith, nor did the Indelible Defendants have reasonable grounds to believe that their actions did not violate the FMLA.

81. As a direct and proximate result of the Indelible Defendants' violation, Mr. Byers has suffered and continues to suffer damages.

82. Mr. Byers' damages flow directly from the Indelible Defendants' violation and are the natural and probable consequence of the violation. Mr. Byers' damages have accrued and continue to accrue.

83. Mr. Byers is entitled to an award of his attorneys' fees and litigation costs pursuant to 29 U.S.C. § 2617.

WHEREFORE, Mr. Byers demands judgment against the Indelible Defendants for damages, costs, interest, lost wages, lost employment benefits, actual monetary losses, back pay, liquidated damages, reinstatement or front pay, attorney's fees and costs, and any further relief this Court deems just and proper.

## Count II
## (Americans with Disabilities Act (ADA) and Florida Civil Rights Act (FCRA))

84. Mr. Byers realleges paragraphs 1 through 69.

85. Messrs. Byers, Hay, White, and Alfaro exchanged promises and agreed to the Shareholders Agreement for Indelible as shareholders. Thus, the Shareholders Agreement legally bound Hay, White, Alfaro, and Indelible (the "Indelible Defendants").

86. Indelible must comply with the ADA and FCRA.

87. Mr. Byers was an employee of Indelible. As a former executive at major financial institutions across the United States, Mr.

Byers was qualified for his position as an officer of Indelible. Mr. Byers also properly performed in his position at Indelible.

88. Mr. Byers' heart condition substantially limited many of his major life activities, which in part motivated him to submit his notice of retirement to Indelible.

89. Mr. Byers placed Indelible on notice of his heart condition many times. Mr. Byers notified Indelible that he was set to undergo a heart procedure and needed time off for recovery, which he requested as a reasonable accommodation.

90. Indelible did not respond to Mr. Byers' communications regarding his impending heart procedure and otherwise failed to engage in the interactive process with Mr. Byers.

91. After Mr. Byers informed Indelible of his heart condition and the required procedure, Indelible ceased paying for Mr. Byers' health insurance policy and allowed his life insurance policy to lapse.

92. The Indelible Defendants scheduled and had special set meetings during the time Mr. Byers was having and recovering from his heart procedure. The Indelible Defendants knew that Mr. Byers was unable to attend these meetings.

93. The Indelible Defendants then relied on these "missed" special meetings as a pretextual basis for terminating Mr. Byers' employment and denying his voluntary retirement.

94. As shown, Indelible violated the ADA and FCRA by:

a. failing to engage in the interactive process with Mr. Byers;

b. discriminating against Mr. Byers on the basis of his disability by (i) ceasing payments for his health insurance and allowing his life insurance to lapse and (ii) terminating him rather than accepting his retirement; and

c. retaliating against Mr. Byers on the basis of his disability for engaging in protected activity by (i) ceasing payments on Mr. Byers' health insurance and allowing his life insurance to lapse and (ii) terminating him rather than accepting his retirement.

95. To that end, Mr. Byers filed a charge with the Equal Employment Opportunity Commission and the Florida Commission on Human Relations.

96. Mr. Byers then received a Notice of Right to Sue.

97. As a direct and proximate result of the Indelible's violations of the ADA and the FCRA, Mr. Byers has suffered and continues to suffer damages.

98. Mr. Byers' damages flow directly from Indelible's violation and are the natural and probable consequence of the violation. Mr. Byers' damages have accrued and continue to accrue.

99. Mr. Byers is entitled to an award of his attorneys' fees and litigation costs pursuant to 42 U.S.C § 12205 and § 760.11, Fla. Stat.

WHEREFORE, Mr. Byers demands judgment against Indelible for damages, costs, interest, and any and all other relief this Court deems just and proper, including, but not limited to, compensatory and consequential damages, lost wages, lost employment benefits, actual monetary losses, back pay, and attorney's fees and costs.

**Count III**
**(Employee Retirement Income Security Act (ERISA)—Indelible)**

100. Mr. Byers realleges paragraphs 1 through 69.

101. Indelible offered employer-sponsored employee welfare benefit plans via a group health and life insurance plan. Mr. Byers, as an employee, enrolled in these benefit plans. Indelible served as the plan administrator or, alternatively, the plan sponsor over these plans.

102. Indelible oversaw functions related to the group health and life insurance plans. For example, Indelible was responsible for ensuring employees' coverage under these plans, making plan eligibility decisions, communicating plan information, and, generally, exercising discretion over the plans. Indelible was thus a fiduciary as it relates to the health and life insurance plans.

103. Indelible was aware of Mr. Byers' need for and use of the health and life insurance plans. Mr. Byers was facing serious heart conditions and underwent a heart procedure around June 2025. Defendants were well informed of Mr. Byers' condition and procedure.

104. Despite Mr. Byers' condition and reliance on the health and life insurance plans, Indelible ceased paying for Mr. Byers' health insurance plan and allowed his life insurance to lapse. Indelible continued coverage for other employees covered by the health and life insurance plans. Indelible thus intentionally interfered with Mr. Byers' ability to utilize and benefit from these plans.

105. Indelible also breached its ERISA fiduciary duties owed to Mr. Byers by:

a. ceasing payments on Mr. Byers' health and life insurance policies;

b. interfering with Mr. Byers' ability to utilize policies, particularly in a time that Indelible knew Mr. Byers was undergoing major health challenges; and

c. retaliating against Mr. Byers for addressing Indelible's failures.

106. As a direct and proximate result of Indelible's violation, Mr. Byers has suffered and continues to suffer damages, specifically damages flowing from Indelible's wrongful termination of plan benefits to Mr. Byers.

107. Mr. Byers' damages flow directly from Indelible's violation and are the natural and probable consequence of the violation. Mr. Byers' damages have accrued and continue to accrue.

108. Mr. Byers is entitled to an award of his attorneys' fees and costs pursuant to 29 U.S.C. § 1132.

WHEREFORE, Mr. Byers demands judgment against Indelible for damages, costs, interest, and any and all other relief this Court deems just and proper, including, but not limited to, benefits due under Mr. Byers' health plan with Indelible, benefits due under Mr. Byers' life insurance plan with Indelible, retroactive reinstatement of coverage, increased medical expenses due to the inability to use the health plan, statutory

penalties, attorney's fees and costs, equitable surcharges for medical expenses and out-of-pocket costs associated with the plans, and equitable surcharges for the lost right to convert the plans.

**Count IV**
**(<u>Florida Private Sector Whistleblower Act—Indelible</u>)**

109. Mr. Byers realleges paragraphs 1 through 69 and 85.

110. Mr. Byers, during his time as an employee and officer of Indelible, disclosed numerous illegal activities to Indelible officials that Indelible was engaging in, including:

a. Indelible's Chief Financial Officer submitting false financial records to Chase Bank;

b. the Indelible Defendants' improper payments to individuals associated with Indelible, such as (i) against the advice of legal counsel, making payments of company profits to a Florida state public official in hopes of receiving government business and (ii) paying certain employees with the personal funds of Mr. White and Mr. Hay, including making payments to select executives in the form of bonuses while declining to give bonuses to others;

c. the Indelible Defendants' use of company funds to pay for activities wholly unrelated to Indelible, such as going to a gentlemen's club;

d. Hay's illegal actions in association with the Hope Florida Foundation;

e. Hay's subsequent use of Indelible funds to pay for attorneys and a public relations firm associated with his actions at the Hope Florida Foundation;

f. Indelible providing a substantial gift to Florida Agricultural and Mechanical University shortly before an important vote at the University, with the intention that White would receive a leadership position with the University as a result, which ultimately occurred;

g. Indelible's failure to maintain contractually mandated health and life insurance policies for Mr. Byers; and

h. Indelible's calling of special meetings during a time that Mr. Byers was incapacitated due to a heart condition and procedure.

111. Mr. Byers provided Indelible written notice of and a reasonable opportunity to correct many of the items listed above. Mr. Byers further threatened to disclose Indelible's improper activities.

112. Mr. Byers also objected to and refused to participate in the referenced illegal activity.

113. Shortly after Mr. Byers learned of many of these illegal activities and voiced his disagreement with them, Indelible terminated Mr. Byers. Mr. Byers believes he was terminated because of his awareness of and disclosure of these illegal activities. Indelible thus took retaliatory personnel action against Mr. Byers on the basis of his protected activity.

114. As a direct and proximate result of Indelible's violation, Mr. Byers has suffered and continues to suffer damages.

115. Mr. Byers' damages flow directly from Indelible's violation and are the natural and probable consequence of the violation. Mr. Byers' damages have accrued and continue to accrue.

116. Mr. Byers is entitled to an award of his attorneys' fees and costs pursuant to § 448.104, Fla. Stat.

WHEREFORE, Mr. Byers demands judgment against Indelible for damages, costs, interest, and any and all other relief this Court deems just

and proper, including, but not limited to, back pay, lost benefits, lost bonuses, front pay, reputational harm, and attorney's fees and costs.

**Count V**
**(Breach of Fiduciary Duty—The Indelible Defendants)**

117. Mr. Byers realleges paragraphs 1 through 69 and 85.

118. As officers and shareholders of Indelible, Messrs. Hay, White, and Alfaro owed fiduciary duties to Mr. Byers.

119. Messrs. Hay, White, and Alfaro caused Mr. Byers' share to be improperly diluted to a 6.99% interest in the company instead of 10%. Messrs. Hay, White, and Alfaro also issued an erroneous K-1, representing Mr. Byers' interest in Indelible as 7.77%

120. Messrs. Hay, White, and Alfaro's misrepresentation on the K-1 caused Mr. Byers to receive, to the extent they were paid, improper tax distributions from Indelible. This and Indelible's failure to pay the tax distributions required under the Shareholders Agreement caused Mr. Byers to incur penalties from the IRS.

121. Messrs. Hay, White, and Alfaro also repeatedly breached their fiduciary duties owed to Mr. Byers by:

a. failing to comply with the Shareholders Agreement in the various ways described above;

b. delaying in processing Mr. Byers' retirement for more than a year;

c. manufacturing pretextual reasoning to avoid paying Mr. Byers the full extent of compensation and benefits to which he was entitled;

d. improperly diluting Mr. Byers' share in the company;

e. refusing to provide Mr. Byers the compensation and benefits to which he was contractually entitled and which the Indelible Defendants provided themselves; and

f. misrepresenting Mr. Byers' ownership of Indelible on K-1s.

122. As a direct and proximate result of the Indelible Defendants' breach of fiduciary duty, Mr. Byers has suffered and continues to suffer damages, including compensatory damages.

123. Mr. Byers' damages flow directly from the Indelible Defendants' breach and are the natural and probable consequence of Defendants' breach. Mr. Byers' damages have accrued and continue to accrue.

WHEREFORE, Mr. Byers demands judgment against the Indelible Defendants for damages, costs, interest, and any and all other relief this Court deems just and proper.

**Count VI**
**(<u>Breach of Shareholders Agreement—The Indelible Defendants</u>)**

124. Mr. Byers realleges paragraphs 1 through 60 and 85.

125. Mr. Byers complied with the terms of the Shareholders Agreement by properly performing his functions as a shareholder, director, and officer of Indelible.

126. The Indelible Defendants breached their obligations under the Shareholders Agreement by failing to:

a. accept Mr. Byers' retirement and provide Mr. Byers with the benefits outlined in Section 5.2;

b. timely conduct a proper fair market valuation, thereby preventing the Closing;

c. make the tax distributions required by Section 5.2(d) and improperly making 2022's tax distribution;

d. make the available cash distributions required by Section 10.1(b) for periods over the past four years;

e. make the required vehicle payments under Schedule 3.3(k);

f. maintain the health and life insurance policies mandated by Schedule 3.3(k), while knowing of Mr. Byers' health condition and required treatments;

g. maintain the Insurance Policy for Mr. Byers, as required by Section 5.2(f);

h. transfer the Insurance Policy to Mr. Byers, as required by Section 5.2(f);

i. adhere to Section 3.3 by changing Mr. Byers' salary without his approval; and

j. maintain Mr. Byers' share of ownership in compliance with Schedule 1 to the Shareholders Agreement.

127. As a direct and proximate result of the Indelible Defendants' breaches, Mr. Byers has suffered and continues to suffer damages and to incur attorneys' fees and litigation costs.

128. Mr. Byers is entitled to an award of his attorneys' fees and litigation costs pursuant to the terms of the Shareholders Agreement.

WHEREFORE, Mr. Byers demands judgment against the Indelible Defendants for damages, interest, costs, and attorneys' fees, together with any further relief the Court deems just and proper.

**Count VII**
**(Breach of Partnership Agreement—the LLP Defendants)**

129. Mr. Byers realleges paragraphs 1 through 69.

130. On March 31, 2022, Messrs. Byers, Hay, and White agreed to the Partnership Agreement for the LLP as partners. Thus, the Partnership Agreement legally bound Messrs. Hay and White, as well as the LLP (the "LLP Defendants").

131. At all times before Defendants prevented Mr. Byers' performance, Mr. Byers fulfilled his obligations under the Partnership Agreement.

132. The LLP Defendants failed to comply with Section 8.04 of the Partnership Agreement, as they have not paid Mr. Byers the fair market value of his interest in the LLP. The LLP Defendants have also failed to comply with the valuation procedures set forth in the Partnership Agreement, as the valuation provided did not evaluate the LLP; it only evaluated Indelible.

133. If the LLP wound up its operations, the LLP Defendants failed to comply with Section 9.04 of the Partnership Agreement by failing to pay Mr. Byers the value of his capital account.

134. The LLP Defendants did not make proper annual tax distributions under Section 6.02, including failing to make a timely distribution in 2024, resulting in an IRS late fee.

135. The LLP did not distribute Available Cash to Mr. Byers as required by Section 6.01 of the Partnership Agreement.

136. Accordingly, the LLP Defendants breached their obligations under the Partnership Agreement. As a direct and proximate result of the LLP Defendants' breach, Mr. Byers has suffered and continues to suffer damages.

137. Mr. Byers' damages flow directly from the LLP Defendants' breach and are the natural and probable consequence of the LLP Defendants' breach. Mr. Byers' damages have accrued and continue to accrue.

138. Mr. Byers is entitled to an award of his attorneys' fees and litigation costs pursuant to the terms of the Partnership Agreement.

WHEREFORE, Mr. Byers demands judgment against the LLP Defendants for damages, costs, interest, attorneys' fees and litigation costs, and any further relief the Court deems just and proper.

**Count VII**
**(Declaratory Relief)**

139. Mr. Byers realleges paragraphs 1 through 69 and 85.

140. This Court has jurisdiction to declare the rights and legal relations of the parties pursuant to 28 U.S.C. §§ 2201–2202.

141. Section 5.2(d) of the Shareholders Agreement requires Indelible to conduct a fair market valuation for the purchase price of Mr. Byers' Common Stock before the Closing.

142. Under the terms of the Shareholders Agreement and the Partnership Agreement, the valuation also was required to evaluate Mr. Byers' partnership interest in the LLP.

143. The Shareholders Agreement states that the valuation is non-binding if it contains manifest error.

144. On January 14, 2026, Indelible provided a valuation to Mr. Byers.

145. The valuation contains a disclaimer that the valuation company did not verify the completeness or accuracy of the information that Defendants supplied the verification company.

146. Mr. Byers requested a copy of the information that Defendants provided the valuation company.

147. Defendants refused to provide Mr. Byers the information he requested.

148. The valuation contained manifest error because:

a. the valuation included a discount based on the false premise that Mr. Byers committed a Defaulting Event;

b. the valuation did not value Mr. Byers' interest in the LLP;

c. the valuation contains a disclaimer that "the validity of the calculation of value depends on the completeness and accuracy of the information provided," and Defendants have refused to disclose to Mr. Byers the information provided for the valuation; and

d. the valuation states that it is to be "used for the purpose of internal planning, and it is invalid for any other purpose"—but

Defendants purport to have used it to value Mr. Byers' ownership interest in Indelible.

149. Defendants insist that the valuation, despite its manifest error, is binding on Mr. Byers.

150. Mr. Byers seeks a judicial determination (i) requiring Defendants to provide Mr. Byers the information on which the January 14, 2026, valuation was based; (ii) holding the valuation as invalid given its manifest error, and (iii) requiring Defendants to obtain a valid valuation as contemplated under the terms of the Shareholders Agreement and the Partnership Agreement.

151. An actual case or controversy exists regarding Mr. Byers' rights and the Defendant's obligations regarding the valuation.

WHEREFORE, Mr. Byers demands a declaratory judgment against the Defendants (i) requiring Defendants to provide Mr. Byers the information supplied to the valuation company, (ii) holding that the valuation is invalid, (iii) requiring a valid valuation, (iv) granting such further relief as the Court deems just and proper, and (v) awarding Mr. Byers reasonable attorneys' fees and costs.

**Jury Trial Demand**

Mr. Byers demands a trial by jury on all issues so triable.

SMITH HULSEY & BUSEY

By */s/ John R. Thomas*
John R. Thomas
Colton C. Teal

Florida Bar Number 77107
Florida Bar Number 1069870
One Independent Drive, Suite 3300
Jacksonville, Florida 32202
(904) 359-7700
(904) 359-7708 (facsimile)
jthomas@smithhulsey.com
cteal@smithhulsey.com

*Attorneys for Jerome Byers*